THE COMMONWEALTH OF PUERTO RICO, ETC., Plaintiff and Appellant, *v.* 317.813 CUERDAS OF LAND IN FAJARDO, PUERTO RICO, TOMÁS RAMÍREZ ET AL., Defendants and Appellees.

No. 12167.   Decided November 24, 1961.

J. B. Fernández Badillo, Secretary of Justice, Arturo Estrella, V. M. Sánchez Fernández, and Nilita Vientós Gastón, Assistant Secretaries of Justice, for appellant. B. Sánchez Castaño and R. Rivero Cervera for appellees.

Division composed of Mr. Justice Belaval, as Chief Judge of Division, Mr. Justice Santana Becerra and Mr. Justice Blanco Lugo.

MR. JUSTICE BELAVAL delivered the opinion of the Court.

At the request of the Industrial Development Company and for the purpose of accelerating the development of the tourist industry in Puerto Rico, the Commonwealth of Puerto Rico filed on January 27, 1955 a condemnation proceeding against Tomás Ramírez, for the purpose of acquiring two parcels of land in the ward of Quebrada Fajardo of the Municipality of Fajardo, Puerto Rico, one of which had an area of 85.339 cuerdas as marked on the plans under letter A, and the other with an area of 232.474 cuerdas, under letter B. According to the documentary evidence of the case, parcel B has an extensive coast line which constitutes the greater part of its northwestern boundary and a long bank along Aguas Prietas Lagoon, which also constitutes the greater part of its eastern boundary. The Commonwealth deposited the amount of $54,888.73, at the rate of $173.79 per cuerda, for parcel A and at the rate of $172.31 per cuerda for parcel B, as the fair and reasonable value of the parcels taken.

Feeling aggrieved by such assessment, Ramírez answered the complaint alleging, on the contrary, that the value of the property taken was $111,234.55, at the rate of $350 per cuerda. After holding the corresponding hearings, the trial court concluded that the reasonable value of the condemned parcels was $240 per cuerda, and ordered the Commonwealth to deposit the sum of $21,386.39, plus interest at the rate of 6 per cent annually, counted from the filing of the proceeding.

The grounds adduced by the trial court for determining the increase in value are the following: The topography of the property in question is undulated and its declivity ranges between 0 and 45°; its better use is for agricultural purposes and pasture for cattle; that after the owner-condemnee acquired the property, he proceeded to clear and condition it.

eliminating the underbrush; and added: "taking into consideration the testimony of the parties, its conditioning and clearance, the observations made by the court during the personal inspection, and the sale of a certain property belonging to defendant Tomás Ramírez, of which the land taken in this case was a part, for the sum of $275 per cuerda, as it appears from deed of sale No. 15 executed by Tomás Rodríguez in favor of Ramón Otilio Soto, in Fajardo, Puerto Rico, on February 9, 1956, before Notary Antonio J. Matta (see Exh. 'X' of both parties); considering, further, the evidence as a whole which is indicative of the reasonable market value, the court arrives at the conclusion that the said value amounts to an average of $240 per cuerda. The court does not take into account the value paid for adjacent lands by the Commonwealth of Puerto Rico, since in our opinion its reasonable value should be determined, according to the circumstances, by the condition of the property as well as by the price paid according to exhibit 'X' of both parties." The condemned owner did not appeal from this determination, but the Commonwealth did.

The Commonwealth's objections are the following: (1) The trial court erred in holding that the reasonable value of the property should be determined, according to the circumstances, by the condition of the property; (2) it erred in holding that the value of the parcel should also be determined on the basis of the price at which the remainder of the property was sold following condemnation; (3) it committed error of law in the weighing of the evidence in holding that the value of the condemned property was $76,275.12; (4) it erred in not taking into account and not giving weight to the sales of similar lands presented by the plaintiff-appellant; (5) it erred in holding that the sum of $54,888.73 deposited by the plaintiff-appellant is not the fair and reasonable value of the parcel taken; (6) it erred in holding that the money spent by the defendant-appellee in the conditioning and clearance of

the property was a controlling factor to be considered in its appraisal; (7) it erred in declaring that witnesses Pablo Calderón, Juan Zalduondo, and Carlos Esteva, Jr. were qualified to testify on the value of the condemned property; (8) it erred in admitting offers for the purchase of the lands; (9) it erred in admitting evidence on a sale of a piece of land without it having been established that it was similar to the condemned parcel, taking into account only the value to the acquirer; (10) it erred in permitting that the appraisals and values established in condemnation cases be proved.

▮ 1–2 The test followed by the trial court in the sense that "its reasonable value should be determined, according to the circumstances, by the condition of the property," is another way of stating the holding in our opinion in *People* v. *Huyke*, 70 P.R.R. 720, 722 (De Jesús, 1950), in which it is held: "for the purpose of making a just appraisal, we must consider . . . the price that a buyer is willing to pay at a voluntary sale and that at which a vendor, under like *circumstances* would be willing to sell, taking into account the *condition* of the land at the time of the condemnation . . ." (Italics ours.) The fact that the trial court determined that another sale made by the same condemnee of the remainder of the property which was not condemned was a typical voluntary sale, under like circumstances, taking into account the condition of the adjacent lands, for the purpose of fixing the value of the parcels taken, is not error. The instant case is the inverse—a subsequent sale by the condemnee, not by the condemnor—of that which we considered in *Puerto Rico Housing Authority* v. *Valldejuli*, 71 P.R.R. 600, 601–04 (Snyder, 1950), and we believe it admits of the further clarification in the case of *People* v. *Colón*, 73 P.R.R. 531, 541 (Todd, Jr., 1952), in the sense that "the rule of admissibility adopted in the *Valldejuli* case is subject to proof that the sale between both contracting parties was spontaneous." We are dealing with a second spontaneous sale, quite con-

temporaneous with the condemnation date, since it was made one year later in the ordinary course of the juridical business. As we held in *Commonwealth* v. *Ocean Park Dev. Corp.,* 79 P.R.R. 149, 159 (Snyder, 1956), we should not part from the principle that every government project enhances the value of adjacent lands unless there is evidence of unusual speculation as a result of the public project, a situation not revealed by the evidence.

■ ■ 3 We have examined the evidence of both parties and are fully satisfied that the value of $76,275.12 determined by the trial court, far from being prejudicial to the Commonwealth, favored it. In adopting the somewhat arbitrary rule in the decision of the case, the trial court did not take into account the panoramic value of the coast line for tourist purposes (amenities), despite the express admission in that sense contained in the Commonwealth's averments and the eloquent demonstration of such panoramic value in the documentary evidence offered by the Commonwealth. In connection with the adoption by the courts of the norm that among the values of public welfare is the aesthetic value, see, for example, *Berman* v. *Parker,* 348 U.S. 26, 33; 99 L. Ed. 27, 38 (Douglas, 1954); *López* v. *Planning Board,* 80 P.R.R. 625, 640 (Saldaña, 1958); *Commonwealth* v. *Aguayo,* 80 P.R.R. 534, 583 (Serrano Geyls, 1958), it is proper to enhance the concepts and to add to the geological or physiocratic value the value derived from the beauty of the place, even though the value is purely contemplative. We are not convinced by the Commonwealth's contention that such value should not be taken into account because a substantial investment would be necessary for the use thereof. The purpose of our public industrial incentives program is precisely to provide the Puerto Rican promoters with the economic means necessary for such endeavors.

■ ■ 4 There is no question that the value of similar sales represents a reliable index of the physiocratic value, but we

should not convert it into an absolute or invariable measure, considering the instability of the monetary values of rapidly growing countries, such as ours at present. See Canasi, *"El Justiprecio en la Expropiación Pública,"* p. 110 (edited by Roque Depalma, Buenos Aires, 1952). We have been unable to find in our authorities a conclusive declaration that the only factor to be taken into account is the comparable value of similar sales. We have always added that, together with this value, there should be taken into account the potential value which the more adequate use represents in a near future. It will suffice to consider the increase of value of the Puerto Rican coast line in the past ten years to realize the wisdom of such a position.

Furthermore, during one of the hearings in this case there occurred a disquieting incident on the prevailing practice of disguising the true value of the property in the deeds of sale for the purpose of evading the payment of income tax on the excess over the previous price. One of the Commonwealth's experts admitted that there may be instances in which the deed price is reduced for the aforesaid purposes. The extent of the generalization of this reproachable practice does not appear from the evidence, and we do not, therefore, feel bound to re-examine our present doctrine on the contemporaneous value of the so-called similar sales; but we must be conscious of the judicial reserve on this point.

5 The Commonwealth complains that the trial court did not admit its appraisal price as being the fair and reasonable value of the parcels taken. The lengthy testimony of the Commonwealth's expert, Acevedo, shows that the principal basis for the official appraisal was the physiocratic value, based exclusively on the topography and composition of the land for the purposes of determining its fertility for agricultural use, discarding every potential value for use in a near future. Although the trial court does not state it clearly, in addition to the actual value it took into account other

factors, for it speaks of the entire evidence and of its inspection of the land. Although the trial judge made no record of the inspection, the plaintiff-appellant was satisfied with the use made by the judge of his observations of the land in rendering his decision. At any rate, the Commonwealth's appraisal factors are almost entirely limited to one single method of appraisal.

■ 6 The monetary factor of the expenses incurred by the owner in the conditioning and clearance of the property should be taken into account whenever the evidence shows, as it did in this case, that at the time of condemnation there had been performed work of felling underbrush, road repairs, planting of guinea grass, and other types of work which enhance the value of the property as compared with the price paid for it as an uncultivated property. This work was performed before the owner learned that the Commonwealth proposed to condemn those lands. We are not therefore dealing with improvements made for the purpose of speculating with the Commonwealth's necessity, but with current and ordinary improvements for the better use of the uncultivated land. The difference in the value of the clear and the uncleared land was established by the expert evidence of the condemned owner, and we can not conclude that it was error to take it into consideration in the final determination of the value, even though it may theoretically partake of the nature of a "damage" rather than of a "value," a situation with which we should not be concerned because our law authorizes compensation for the value as well as for the damage.

■ 7 Pablo Calderón transacts 80 per cent of the real-estate business in Puerto Rico, has been a member of the Scientific Assessment Committee of Puerto Rico (Tr. I, 24); Juan Zalduondo is an agricultural engineer and says that he was practically brought up on the farm object of the appraisal (Tr. I, 34), and has inherited 2,000 cuerdas of

land which he cultivates (Tr. I, 36) ; Carlos Esteva, Jr. is a realtor, graduated as surveyor from the College of Agriculture of Mayagüez and as chemist from Cornell University, has been Acting Assistant Commissioner of Agriculture of Puerto Rico and Director of the Tobacco Institute of Puerto Rico, and is at the head of Centro Médico Esteva, where appraisal work is constantly done (Tr. II, 3–5). The diversity of experience and knowledge of these three experts convince us of their capacity. In determining the capacity of an expert, we can not be guided by a single criterion of specialization or by a desire of strict professionalism, but by the knowledge acquired from scientific matters embraced in a profession, or the knowledge acquired through daily experience in some task, or direct contact with some activity of human beings. *People* v. *López*, 76 P.R.R. 354, 358–59 (Belaval, 1954). The question always depends on the degree of credibility which the witness deserves rather than on his lack of capacity.

8–10 It is clear that the offers of purchase or options are inadmissible in the valuation of property taken. *People* v. *Colón*, 73 P.R.R. 531, 538 (Todd, Jr., 1952) ; that the sale of lands which are not similar as to their topography and location is not admissible either—*People* v. *Colón*, *supra* at 535—although there is not a steadfast rule for determining the similarity or dissimilarity—*People* v. *Colón*, *supra* at 535. And that the sales to persons possessing the power to condemn must be scrutinized more closely than those to individuals —*P. R. Housing Authority* v. *Valldejuli*, 71 P.R.R. 600, 602 (Snyder, 1950), considering the possible coercive effect of the former. However, the errors which could have been committed in admitting in evidence such offers, dissimilar sales, and appraisals in condemnation, do not constitute sufficient error to warrant reversal since it is evident that the judgment was not based on any of them.

The judgment appealed from will be affirmed.